In the Matter of the CARE AND TREATMENT OF Joseph M. JOHNSON, Respondent–Appellant.

No. 26023.

Missouri Court of Appeals, Southern District, Division Two.

April 6, 2005.

Motion for Rehearing or Transfer to Supreme Court Denied April 22, 2005.

Application for Transfer Denied May 31, 2005.

Nancy A. McKerrow, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl Caponegro Nield, Assoc. Solicitor, Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

This is the second appeal arising from the State's effort to have Joseph Johnson ("Johnson") confined to a secure facility for treatment pursuant to the Sexually Violent Predators Civil Commitment Act ("SVPCCA"), §§ 632.480–.513.[1] In March 1999, the State filed a petition in the probate division of the Circuit Court of Newton County, Missouri, alleging that Johnson was a sexually violent predator ("SVP"). In September 1999, a jury returned a unanimous verdict finding that Johnson was a SVP. This verdict was based on expert testimony given by Gerald Hoeflein ("Hoeflein"), who opined that Johnson suffered from mental abnormalities which made him more likely to commit crimes of a sexually violent nature. The trial court admitted Hoeflein's opinions over Johnson's objection that Hoeflein was unqualified to render such expert testimony.

---

1. All references to statutes are to RSMo (2000).

In Johnson's appeal from the judgment entered after the first trial, the Supreme Court of Missouri agreed the trial court erred in admitting Hoeflein's testimony:

Without Hoeflein's testimony, the state lacks sufficient evidence to support two of the three essential elements of its case—that Johnson suffers from a mental abnormality and that he suffers from a mental abnormality that makes him more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility. Finding that the trial court abused its discretion in admitting Hoeflein's testimony and that the admission of the testimony was prejudicial, the judgment is reversed. The state, however, is entitled to rely on the trial court's erroneous ruling in determining what evidence to produce. There may be other evidence that the state can present to make a submissible case. Therefore, the case is remanded.

*Johnson v. State*, 58 S.W.3d 496, 499–500 (Mo. banc 2001) (citation omitted).

On remand, the State obtained another expert, Dr. Roy Lacoursiere, to evaluate Johnson and testify at the trial in place of Hoeflein. The case was tried to the court because Johnson waived his right to a jury trial after the case was remanded. The State presented all of the evidence at the trial. The evidence and inferences favorable to the judgment are summarized below.

Johnson had two prior convictions for sexual offenses. In 1991, Johnson was convicted of two counts of sodomy. The victim in that case was his 9–year–old stepdaughter, April. Johnson fondled April's breasts and vaginal area, both over and under her clothing, with his hand; he also had her perform oral sex upon him on one occasion. In 1995, Johnson was convicted of committing sexual assault in the first degree on his 15–year–old niece, Crystal, by having sexual intercourse with her. Johnson used verbal and physical force on Crystal to accomplish the assault. He was on parole from his first conviction when he committed the sexual assault on Crystal. Each time Johnson was incarcerated, he was placed in the Missouri Sex Offenders Program ("MOSOP"). MOSOP is a 9 to 12 month psycho-educational program involving cognitive behavioral therapy to help offenders reduce their risk of reoffending. Johnson did not successfully complete MOSOP on either occasion.

There was evidence that Johnson had sexual contact with other underage girls besides April and Crystal. Hoeflein was called as a fact witness to testify about information he obtained from Johnson during an interview. Johnson admitted having sex with a young neighbor named Joanna, who was between 16–18 years old at the time. She became pregnant as a result of this sexual contact. April's older sister, Paula, was called as a witness and testified that she was sexually abused by Johnson when she was 11 years old. This sexual abuse by Johnson included the following acts by him: (1) forcibly removing Paula's clothes and fondling her vaginal area; (2) performing oral sex on her against her will; (3) forcing her to perform oral sex on him; and (4) placing his fingers inside her vagina. On several occasions, this sexual abuse by Johnson was accompanied by physical violence toward Paula or threats to kill her. Johnson's sexual abuse of April began after Paula moved to Missouri to live with her grandmother.

The State presented expert testimony from two witnesses: a psychologist, Dr. Steven Mandracchia; and a psychiatrist, Dr. Roy Lacoursiere. Dr. Mandracchia testified that he was concerned about a statement by Johnson that he was "missing teenage girls the most" because this appeared to be an admitted preference for

an inappropriate sexual object. Assuming that this was a true statement and that Johnson did have sexual contact with Paula, Dr. Mandracchia would diagnose Johnson as having paraphilia NOS.[2] Dr. Lacoursiere testified that Johnson suffered from two mental abnormalities: paraphilia NOS and personality disorder NOS with antisocial traits. Each of these mental abnormalities predisposes Johnson to commit sexually violent offenses in a degree that causes him serious difficulty in controlling his behavior. These mental abnormalities make Johnson more likely than not to engage in predatory acts of sexually violent behavior if not confined to a secure facility.

After hearing the evidence, the trial judge found beyond a reasonable doubt that Johnson was a SVP. The court ordered Johnson committed to the custody of the Department of Mental Health for care, control and treatment until such time as his mental abnormality has so changed that he is safe to be at large. Johnson appeals from this judgment.

 In this court-tried case, our review is governed by Rule 84.13(d).[3] We must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *In re Care and Treatment of Lieurance,* 130 S.W.3d 693, 696 (Mo.App.2004).[4] A judgment is presumed correct, and the appellant has the burden of proving it erroneous. *Wingate v. Griffin,* 610 S.W.2d 417, 419 (Mo.App. 1980). "We review the evidence and all reasonable inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences." *Arndt v. Beardsley,* 102 S.W.3d 572, 574 (Mo.App.2003). Credibility of the witnesses and the weight to be given to their testimony is for the trial court, which is free to believe none, part, or all of the testimony of any witness. *Keller v. Friendly Ford, Inc.,* 782 S.W.2d 170, 173 (Mo.App.1990). We defer to the trial judge's superior opportunity to assess the witnesses' credibility. *Harris v. Lynch,* 940 S.W.2d 42, 45 (Mo.App.1997). We independently review the trial court's conclusions of law. *See Lieurance,* 130 S.W.3d at 696 (when the issues on appeal are legal in nature, we do not defer to the trial court's judgment).

Johnson asserts five points of trial court error in this appeal. He contends the trial court erred by: (1) basing its judgment on two mental abnormalities that were not pled in the State's petition; (2) denying Johnson's motion for summary judgment because there were no factual issues in dispute on remand; (3) denying Johnson's motion for summary judgment based on a constitutional equal protection challenge to the SVPCCA as applied to persons in custody when the commitment process is commenced; (4) overruling Johnson's motion to dismiss the case at the probable cause hearing because of insufficiency of the evidence; and (5) overruling Johnson's motion to prohibit the State from obtaining a second mental evaluation on remand. For ease of analysis and discussion, we shall address Johnson's points inversely. Additional facts are provided below when relevant to our discussion of the issues raised in Johnson's appeal.

2. NOS means "not otherwise specified."

3. All references to rules are to the Missouri Court Rules (2005).

4. *Murphy* interpreted the provisions of former Rule 73.01(c). The provisions of that rule were transferred, in essentially the same form, to Rule 84.13(d) effective January 1, 2000.

*Point V*

■ Shortly after the case was remanded for a new trial, Johnson's counsel filed a motion to prohibit the State from seeking a second mental examination of Johnson. The evident purpose of this motion was to prevent the State from obtaining another expert witness to replace Hoeflein, who was not qualified to give the expert testimony necessary to make a submissible case. *See Johnson,* 58 S.W.3d at 499–500. The motion was overruled, and Dr. Lacoursiere was permitted to examine Johnson. In Johnson's fifth point, he contends this ruling was error because § 632.489.4 limits the State to a single mental examination of Johnson. We disagree. Subsection 4 of § 632.489 states, in pertinent part, as follows:

> If the probable cause determination is made, the court shall direct that the person be transferred to an appropriate secure facility, including, but not limited to, a county jail, for an evaluation as to whether the person is a sexually violent predator.... The court shall direct the director of the department of mental health to have the person examined by a psychiatrist or psychologist as defined in section 632.005 who was not a member of the multidisciplinary team that previously reviewed the person's records. In addition, such person may be examined by a consenting psychiatrist or psychologist of the person's choice at the person's own expense. Any examination shall be conducted in the facility in which the person is confined. Any examinations ordered shall be made at such time and under such conditions as the court deems proper; except that, if the order directs the director of the department of mental health to have the person examined, the director shall determine the time, place and conditions under which the examination shall be conducted.... Any examination per-

formed pursuant to this section shall be completed and filed with the court within sixty days of the date the order is received by the director or other evaluator unless the court for good cause orders otherwise. *One examination shall be provided at no charge by the department. All costs of any subsequent evaluations shall be assessed to the party requesting the evaluation.*

(Italics added.) We have previously construed the italicized language in this portion of the statute to create an implicit right on the part of the State to request additional mental examinations of a detainee. *See In re Care and Treatment of Spencer,* 103 S.W.3d 407, 418–19 (Mo.App. 2003). We adhere to that ruling in the case at bar. The additional examination by Dr. Lacoursiere was necessitated by the fact that Hoeflein had been determined, on appeal, to be unqualified to give crucial evidence in the case. As the Supreme Court noted in its opinion, however, the State was entitled to rely on the trial court's ruling as to Hoeflein's qualifications in deciding what evidence to produce. *See Johnson,* 58 S.W.3d at 499–500. Once that ruling was overturned on appeal, the State had a right to request another mental examination by a different expert with proper qualifications. Accordingly, the trial court did not err in allowing Johnson to be examined by Dr. Lacoursiere. Johnson's fifth point is denied.

*Point IV*

■ After the case was remanded for a new trial, Johnson's counsel filed a motion to dismiss the case on the ground that insufficient evidence had been presented at the probable cause hearing. The motion alleged that the only witness for the State was Hoeflein, and he had been determined on appeal to be unqualified to diagnose mental disorders. The trial court denied

the motion. This ruling forms the basis for Johnson's fourth point on appeal. He contends the trial court should have dismissed the case because Hoeflein, the State's only witness, "was unqualified to offer any opinion as to a diagnosis."

We are unable to address the merits of this argument because we lack an adequate record to do so. In order to determine the sufficiency of the evidence presented at the probable cause hearing, we must have a transcript of that proceeding. *See Holder v. Schenherr*, 55 S.W.3d 505, 507 (Mo.App.2001); *Page v. Associated Couriers, Inc.*, 868 S.W.2d 138, 140 (Mo.App.1993). Johnson has failed to file one.[5] Without a transcript, this Court has no way of knowing what evidence may have been presented at the hearing. *Litton v. Kornbrust*, 85 S.W.3d 110, 115 (Mo. App.2002). "An appellate court is bound by the record on appeal and cannot speculate as to what evidence may have been presented below which is not reflected by the record." *State ex rel. Morgan ex rel. Div. of Child Support Enforcement v. Okoye*, 141 S.W.3d 410, 412 (Mo.App.2004).

Rule 81.12(a) states that "[t]he record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." If Johnson wanted us to review the sufficiency of the evidence presented at the probable cause hearing, it was his duty to furnish a transcript containing all of the evidence relating thereto. *See Ellis v. Farmers Ins. Group*, 659 S.W.2d 3, 4 (Mo. App.1983). Johnson's brief purports to describe the testimony that was presented

to the trial judge at the probable cause hearing, but because these statements are unsupported by the record and are not evidence, "they are insufficient to supply essential matters for review." *Flora v. Flora*, 834 S.W.2d 822, 823 (Mo.App.1992); *see Brancato v. Wholesale Tool Co., Inc.*, 950 S.W.2d 551, 554–55 (Mo.App.1997); *Ellis*, 659 S.W.2d at 4. "An appellant is required to furnish a transcript containing a record of the proceedings which the appellant seeks to have reviewed. In the absence of such a record the appellate court has nothing to decide." *Page*, 868 S.W.2d at 140 (citation omitted); *see also State v. Christina*, 911 S.W.2d 319, 321 (Mo.App.1995). Without a transcript, we lack the necessary information to rule with any degree of confidence in the fairness, reasonableness and accuracy of our final conclusion. *See Brancato*, 950 S.W.2d at 554. Johnson's fourth point is denied because this Court has not been provided with a record sufficient to determine the issue presented.

### Points II and III

After the case was remanded for a new trial, Johnson's attorney filed two motions for summary judgment. The first motion was filed in December 2001. It asserted that Johnson was entitled to summary judgment because the State's only expert, Hoeflein, was unqualified to diagnose a mental abnormality, and the State was not entitled to replace him with a qualified expert on remand. The State responded in the manner required by Rule 74.04. An affidavit from Dr. Lacoursiere and a copy of his *curriculum vitae* were included as a part of the State's response

---

5. In Johnson's brief, he states that "no transcript of the probable cause hearing exists," but he does not explain why that is so. In particular, he makes no claim that he exercised due diligence in seeking preparation of a complete transcript and that his inability to obtain the probable cause hearing transcript is not through any fault or negligence on his part. *See Lynn v. Plumb*, 808 S.W.2d 439, 439–40 (Mo.App.1991).

to the motion. In pertinent part, Dr. Lacoursiere's affidavit stated that:

4. I am board certified in forensic psychiatry.

5. It is my expert opinion to a reasonable degree of medical certainty, that the respondent [Johnson] suffers from the mental abnormalities of Paraphilia NOS and Personality Disorder NOS, both within the meaning of section 632.480.

6. It is my expert opinion, to a reasonable degree of medical certainty, that as a result of his mental abnormalities, the respondent [Johnson] is more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility.

In January 2002, the trial court overruled the motion "as there are controverted facts." A second motion identical to the first was filed in December 2002. The motion was overruled again by the trial court. These rulings form the basis for Johnson's second and third points on appeal.

In Johnson's second point, he contends the trial court erred in failing to grant his motion for summary judgment because there were no factual issues in dispute. The premise of this argument is that the State was barred from obtaining another expert by § 632.489.4. In Johnson's third point, he contends the trial court erred in denying the motions for summary judgment because of an alleged constitutional infirmity in the SVPCCA, which Johnson raises for the first time on appeal and requests that we review for plain error. Because of the interrelated nature of the points, we address them together.

 Johnson's second and third points seek to appeal from the denial of his motions for summary judgment. That is significant "because the matter for resolution in the appellate court is restricted to the issue raised in the point relied on." *Underwood v. Hash*, 67 S.W.3d 770, 779 (Mo.App.2002). It is well-settled that the denial of a motion for summary judgment does not present an appealable issue.[6] *See, e.g., Murphy v. Jackson Nat. Life Ins. Co.*, 83 S.W.3d 663, 669 n. 5 (Mo.App.2002); *Trimble v. Pracna*, 51 S.W.3d 481, 497 (Mo.App.2001); *Shelter Mut. Ins. Co. v. DeShazo*, 955 S.W.2d 234, 238 (Mo.App. 1997); *Ferguson v. Wozniak Industries, Inc.*, 931 S.W.2d 919, 923 (Mo.App.1996). "A trial court order denying a party's motion for summary judgment is not reviewable, even when the appeal is taken from the final judgment in the case." *Reis v. Peabody Coal Co.*, 935 S.W.2d 625, 632 (Mo.App.1996); *see Sanders v. Insurance Co. of North America*, 42 S.W.3d 1, 8 (Mo.App.2000); *L.C. Development Co., Inc. v. Lincoln County*, 26 S.W.3d 336, 338 (Mo.App.2000); *Lesinski v. Joseph P. Caulfield & Associates, Inc.*, 12 S.W.3d 394, 396 (Mo.App.2000); *Kabir v. Missouri Dept. of Social Services*, 845 S.W.2d 102, 103 (Mo.App.1993). The rationale for this rule was explained in *Parker v. Wallace*, 431 S.W.2d 136 (Mo.1968):

---

6. There is one recognized exception to this general rule. An order denying a motion for summary judgment may be reviewed on appeal when the merits of the motion are intertwined with the propriety of an appealable order granting summary judgment to another party. *Nodaway Valley Bank v. E.L. Crawford Constr., Inc.*, 126 S.W.3d 820, 824 (Mo.App. 2004); *Bituminous Cas. Corp. v. McDowell*, 107 S.W.3d 327, 333 (Mo.App.2003); *Fischer v. City of Washington*, 55 S.W.3d 372, 381 (Mo.App.2001). This exception only applies in cases involving extraordinary circumstances. *Brock v. Blackwood*, 143 S.W.3d 47, 69–70 (Mo.App.2004); *Stotts v. Progressive Classic Ins. Co.*, 118 S.W.3d 655, 668–69 (Mo. App.2003). Because this case does not involve an appeal from a grant of summary judgment to the State, the general rule is controlling here.

Plaintiff made a motion for summary judgment in his favor which was overruled. He here assigns as error that action by the trial court.... The matter of the propriety of the court's action in overruling a motion for summary judgment is not an appealable order. Upon that ruling, the issues raised by the pleadings are still in the case, and it is upon those issues, when decided and if timely and properly presented, that an appeal lies.

*Id.* at 137–38 (citation omitted). That is certainly true here because the trial court denied the motions for summary judgment on the ground that there were controverted issues of fact to decide. The rulings on the motions merely postponed a decision until the trial occurred, and these factual disputes were not finally determined until the trial court entered its judgment after a trial on the merits. Johnson's appeal lies from that judgment and the issues it adjudicates. Accordingly, Johnson's second and third points are denied because neither one presents an appealable issue for us to review.[7]

## *Point I*

■ In Johnson's first point, he contends the trial court erred in finding Johnson to be a SVP because the State failed to present evidence that he suffered from the mental abnormalities alleged in the petition. The petition alleged that Johnson "has a history of activities which demonstrate that he has and is currently suffering from a mental abnormality Antisocial Personality Disorder and Sexual Abuse of a Child Disorder, which makes him more

likely than not to engage in predatory acts of sexual violence if released." At trial, Dr. Lacoursiere testified that Johnson suffered from the mental abnormalities of paraphilia NOS and personality disorder NOS with antisocial traits. Johnson did not object to the admission of this testimony.

Johnson argues that there is a fatal variance between the mental abnormalities pled in the petition and the mental abnormalities proven at trial. We disagree. Rule 55.33(b) states, in pertinent part, that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." By failing to object at trial, Johnson impliedly consented to a trial on the issue of whether he suffered from the mental abnormalities of paraphilia NOS and personality disorder NOS with antisocial traits. *In re Care and Treatment of Spencer*, 103 S.W.3d 407, 419–20 (Mo.App. 2003) is directly on point. There, the petition alleged that Spencer suffered from the mental abnormality of pedophilia. At trial, the State's psychiatrist testified that Spencer suffered from the mental abnormalities of pedophilia and narcissistic personality disorder ("NPD"). Spencer did not object to the admission of this testimony. On appeal, however, Spencer argued that the evidence concerning NPD was erroneously admitted because it was irrelevant to the issues presented by the petition. We held that the trial judge did not err in admitting the testimony about NPD:

In Point IV, [Spencer] contends that the trial court erred in its judgment and

---

7. In any event, our *ex gratia* review of the arguments presented in Johnson's brief reveals no error. Dr. Lacoursiere's affidavit was sufficient to raise genuine issues of material fact that precluded summary judgment. *See* Rule 74.04(c)(6). Johnson waived the constitutional challenge he seeks to assert in

Point III by not raising it until this second appeal. *See Hollis v. Blevins*, 926 S.W.2d 683, 683–84 (Mo. banc 1996); *Land Clearance for Redevelopment Auth. v. Kan. Univ. Endowment Ass'n*, 805 S.W.2d 173, 176 (Mo. banc 1991).

order of commitment by allowing the introduction of evidence related to NPD. At trial, [Spencer] did not object to this evidence as being beyond the scope of the pleadings. When a party does not object to evidence on an issue that is beyond the scope of the pleadings, the pleadings are automatically amended to conform to the evidence.

*Id.* at 419. We reach the same conclusion here. Since Johnson did not object to Dr. Lacoursiere's testimony on the ground that it was beyond the scope of the pleadings, they were automatically amended to conform to the evidence presented at the trial. As a consequence, the trial court did not err in finding Johnson to be a SVP based on that evidence. Johnson's first point is denied.

The judgment of the trial court is affirmed.

PARRISH, P.J., and BARNEY, J., concur.