**Richard WOOLDRIDGE,
Plaintiff–Appellant,**

v.

**GREENE COUNTY, Missouri,
Defendant–Respondent.**

**No. 27217.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 23, 2006.

678

George O. Suggs and Nancy M. Watkins of St. Louis, MO, for appellant.

Theodore L. Johnson, III of Springfield, MO, for respondent.

JEFFREY W. BATES, Chief Judge and Presiding Judge.

The dispositive issue in this appeal is whether a petition for judicial review filed by Richard Wooldridge (Wooldridge) arose from an uncontested or contested case within the meaning of the Missouri Administrative Procedure Act (MAPA). *See* § 536.010 *et seq.*[1] After Wooldridge's employment with Greene County was terminated, he sought judicial review of that decision as an uncontested case pursuant to § 536.150. The trial court, however, treated the matter as a contested case and dismissed the cause for lack of subject matter jurisdiction on the ground that the petition for review had not been timely filed. *See* § 536.110.1.

■■■■ Wooldridge's appeal presents three points for our decision, but his first point is dispositive. In this point, Wooldridge contends the trial court erred in dismissing his petition for review because: (1) the time limitation in § 536.110.1 does not apply, in that he was seeking judicial review of an uncontested case; and (2) the court, therefore, had jurisdiction to address the merits of his petition.[2] We agree. Accordingly, we reverse the judgment and remand the case for review by the trial court as an uncontested case pursuant to § 536.150.

## I. Factual and Procedural Background

In 1994, Wooldridge began working for the Greene County Highway Department (the GCHD) as an equipment operator.[3] Greene County has a Personnel Policy Manual (the Manual) that applies to ten county offices, including the GCHD. In the version of the Manual that became effective on April 17, 2000, employees were

1. All references to statutes are to RSMo (2000) unless otherwise indicated. All references to rules are to the Missouri Court Rules (2006).

2. In Point II, Wooldridge contends the court erred in denying his motion for summary judgment on the merits of his petition for review. This point is denied because "[i]t is well-settled that the denial of a motion for summary judgment does not present an appealable issue." *In re Care and Treatment of Johnson,* 161 S.W.3d 873, 880 (Mo.App.2005). In Point III, he claims the court erred in granting summary judgment to Greene County. This point is denied because it is based on a fundamental misconception about what the trial court did. A summary judgment constitutes a final judgment on the merits of a cause of action. *Sheedy v. Missouri Highways and Transp. Comm'n,* 180 S.W.3d 66, 71 (Mo.App.

2005). Here, the case was dismissed for lack of subject matter jurisdiction. Subject matter jurisdiction cannot be conferred by agreement or waiver, and any action taken by a court lacking subject matter jurisdiction is null and void. *State ex rel. Director of Revenue v. Rauch,* 971 S.W.2d 350, 353 (Mo.App.1998); *Gunn v. Director of Revenue,* 876 S.W.2d 42, 43 (Mo.App.1994). "When the court lacks subject matter jurisdiction, the court can do nothing more than exercise its inherent power to dismiss." *Rauch,* 971 S.W.2d at 353; *see* Rule 55.27(g)(3). Therefore, the trial court never reached the merits of the action so as to be able to grant a summary judgment in favor of Greene County.

3. Greene County, Missouri, oversees the operations of the GCHD and constitutes an "agency" as defined by MAPA. *See* § 536.010(2) RSMo Cum.Supp. (2005).

required to acknowledge "that the manual is not a contract of employment, express or implied, between me and Greene County, or any elected official thereof, and that I should not view it as such or as a guarantee of employment for any specific duration." Section 1–1 of the Manual reiterated that point by stating that the policies contained therein "are not intended to be a contract between the county, or any elected officials thereof, and its employees and do not create contractual rights for employees." Section 15–2 of the Manual, entitled "Termination for Cause," listed 19 infractions of conduct rules that might result in immediate termination for cause. The sixth such infraction was "[c]onviction of a felony or of a misdemeanor involving moral turpitude." If an employee is going to be discharged for cause, the Manual provides for a pre-termination hearing upon proper request. At this hearing, all witnesses are required to testify under oath; the parties have a right to be represented by legal counsel; they may present witnesses and engage in cross-examination of opposing witnesses; the employee can have a record of the hearing transcribed at his expense; and, if the employee is terminated, the decision-maker is required to give the employee a decision accompanied by written findings based upon the hearing record summarizing the relevant facts and reasons for the action.

On November 2, 2001, the GCHD and Local 50 of the AFL–CIO entered into a union resolution (the Resolution) that was effective for budget years 2002–2005. Employees like Wooldridge who worked for the GCHD were covered by both the Manual and the Resolution. In the event of a conflict between the provisions of those two documents, the Resolution was controlling.[4] Article 22 of the Resolution stated:

**Section 1. Employee Conduct**—Employees are entitled to retain their jobs on the basis of proper conduct and satisfactory performance, including efficiency, productivity and honesty. The Greene County Highway Administrator shall have the right to discipline or discharge any employee who fails to meet the foregoing conditions and particularly may discharge an employee because of the use of intoxicating liquors during working hours, violation of safety rules, absence without leave, excessive absenteeism, dishonesty, insubordination, habitual neglect or carelessness resulting in damage to County property or equipment, sleeping while on duty, or for any other just cause.

Thus, the authority to discharge a union employee for cause was vested exclusively in Greene County Highway Administrator Kevin Lowe (Administrator Lowe).

Sometime in 2001, Wooldridge was charged with possession of methamphetamine. This charge arose out of a traffic stop that occurred during non-work hours. On April 4, 2002, Wooldridge pled guilty to the class C felony of possession of a controlled substance. He was given a suspended imposition of sentence (SIS) and placed on probation for a period of five years. It was Wooldridge's understanding from discussions with his attorney that the SIS disposition meant his guilty plea did not result in a felony conviction. Although at least one of Wooldridge's co-workers was aware of this incident, Wooldridge did not

4. Section 1–3 of the Manual explicitly provided that "[e]mployees who are members of an authorized and accepted bargaining unit and covered by a separate resolution may also be covered by this manual. However, if there is a conflict between the information contained in this manual and the resolution, the provisions of the resolution will prevail for bargaining unit employees."

report the guilty plea to his crew leader, supervisor or Administrator Lowe.

Over two years later, Wooldridge applied for the position of crew leader. As a part of the interview process, Wooldridge's name was run through the Greene County Circuit Court website. That search revealed the aforementioned guilty plea. Administrator Lowe checked with Wooldridge's supervisor and learned that he had not been apprised by Wooldridge of the charge or the plea. After additional discussions with Wooldridge's crew leader and other members of the work crew, Administrator Lowe decided to terminate Wooldridge's employment. On July 6, 2004, the GCHD operations director sent Wooldridge a letter notifying him of Administrator Lowe's decision. In pertinent part, the letter stated:

Recently the Greene County Highway Department learned you had been charged with the felony possession of controlled substance. We believe your conduct surrounding this charge constitutes dishonesty as set out in the Resolution. In particular, you concealed from your employer the fact that you had been charged with this felony and later pled guilty to it. Moreover, at no time did you ever report this to your employer and deliberately concealed all of these things from us. Accordingly, we have no choice other than to terminate your employment with the Greene County Highway Department effective immediately.

Section 2 of the Resolution provided that an employee like Wooldridge was entitled to receive assistance from the union in all meetings involving possible disciplinary action. The Resolution also contained a progressive, six-step grievance procedure which may be generally summarized in the following fashion: (1) an informal discussion between the employee and his immediate supervisor; (2) a written notice of grievance filed with the division director; (3) a discussion of the grievance directly between the business agent and the Administrator's designee; (4) review by the Harmony Committee and the right to appeal the decision to the Administrator; (5) an alternative, original decision by the Administrator if the Harmony Committee cannot reach a majority decision; and (6) a final decision binding on all the parties by the Administrator.

On July 9, 2004, Clark W. Brown (Brown), the union's business agent, sent a letter on Wooldridge's behalf to the operations director enclosing Grievance Report Form # 1045 and requesting a meeting with the parties involved. This initiated the grievance procedure at Step two.

On July 20, 2004, Administrator Lowe sent a letter to Brown. In pertinent part, the letter stated: "This is in reference to Grievance # 1045 concerning Mr. Richard Wooldridge. We have discussed in great detail the areas concerning this matter. We cannot tolerate issues of this nature concerning employee conduct and dishonesty and have no choice but to terminate Mr. Wooldridge's employment with Greene County."

Step three of the grievance procedure was unsuccessfully exhausted on July 22, 2004. That same day, Brown sent a letter to Administrator Lowe requesting that the grievance procedure move to Step four, which was a review by the Harmony Committee. This committee was to be composed of two persons selected by the union, two persons selected by management and one neutral person drawn from a joint pool submitted by Greene County and the union. According to the Resolution, the following procedure was to be utilized during this review process:

(1) The Highway Department Administrator or his designate and representative shall have the right to be present at

the hearing. The Employee and his representative shall have the right to be present at the hearing, except only the Harmony Committee shall be present at the time of deliberations upon a decision made.

(2) Each party shall have the right to question the witnesses before the Harmony Committee, however, each side shall be given only one opportunity to examine witnesses unless agreed to be [sic] the Harmony Committee. The Harmony Committee shall question witnesses following the questioning be [sic] each side. No questions shall be asked after the Committee questions a witness, unless agreed to by the Harmony Committee.

(3) The decision of the Harmony Committee may be appealed to the Department Administrator following decision by either side.

The Harmony Committee met on August 26, 2004. The only record of what transpired is contained in certain "Minutes" of the meeting. The identity of the person who prepared this eight-page document is not disclosed by the record. Although the Resolution gave the committee the right to make a binding decision on the grievance by majority vote, that is not what actually took place. Rather than deciding the matter, the minutes of the Harmony Committee meeting make it clear that the avowed purpose of the meeting was "to come up with a recommendation for [Administrator Lowe] in regards to the termination of employment of Richard Wooldridge.... The decision of the panel is only a recommendation not a final decision. The final decision can only be made by [Administrator Lowe]."

The position of the GCHD was that Wooldridge was properly terminated for just cause per Article 22 of the Resolution because of dishonesty. The "facts" to support this position were presented via information provided by Administrator Lowe, Crew Leader Herschel Gott and co-worker Ronnie Hamilton.[5] Wooldridge's position was that he had not been dishonest because he was under no duty to report a guilty plea which resulted in a SIS. The "facts" to support this position were presented via information provided by himself and Brown. It further appears that statements made by some of these persons were recorded in the minutes in a summary fashion only. For example, the minutes contain the following summary of Administrator Lowe's explanation for discharging Wooldridge:

> Statement: Situation with Mr. Wooldridge came to light when he put in for a open bid position for Crew Leader. Looking into his time record showed that he was not a likely candidate for the position but was interviewed anyway. As part of the interview process he was looked up on the Greene County Court System website. It showed that he had been charged with and pled guilty to felony charge of possession of controlled substance. The original charge was in 2001. Checked with Rick's supervisor to see if he had any information about these charges, was told did not know it was about drugs thought he had family problem. Checked with Crew Leader and various members of crew. After ascertaining the facts of the situation felt had no choice but to terminate Mr. Wooldridge. All county employees represent the County. Public impression is very important.

Other statements made by the various "witnesses," members of the Harmony Committee and others present at the meeting appear to have been recorded ver-

---

5. There is no indication that any of the persons who appeared before the Harmony Committee provided information and/or answered questions under oath.

batim. At the conclusion of the meeting, the Harmony Committee decided to take a secret vote to answer the following question: "Should the panel recommend reinstatement?" The committee members voted three to two against recommending that Wooldridge be reinstated.

The same day the Harmony Committee meeting was held, Brown was sent two letters. The first, which was sent by the Harmony Committee's secretary, notified Brown that the committee had voted 3–2 not to recommend reinstatement. The second, which was sent by Administrator Lowe, stated that after considering the outcome of the grievance meeting, "I agree with the recommendation not to reinstate Mr. Richard Wooldridge to the Greene County Highway Department."

On October 18, 2004, Wooldridge filed a petition for judicial review. In a first amended petition, Wooldridge made it clear that he was seeking judicial review of a decision by Greene County "in an uncontested case pursuant to Section 536.150 R.S.Mo." In Greene County's answer to this petition, it denied the decision below had been made in an uncontested case. Thereafter, Greene County filed a motion for summary judgment and an alternative motion to dismiss the case for lack of subject matter jurisdiction. Based on the premise that Wooldridge was, in fact, seeking judicial review of a contested case, Greene County argued the petition had not been timely filed within 30 days as required by § 536.110.1 and the court, therefore, lacked subject matter jurisdiction. In the part of the motion requesting summary judgment, Greene County asserted as an undisputed material fact that: "On August 26, 2004, Administrator Lowe sent a letter to Clark Brown advising that he [Lowe] agreed with the recommendation not to reinstate [Wooldridge] to the Greene County Highway Department. This was the agency's final decision." In Wooldridge's response, he admitted this

statement was true. Wooldridge also filed a motion requesting that summary judgment be entered on his behalf on the merits of his petition for review.

In June 2005, a hearing was held on the motions for summary judgment and Greene County's motion to dismiss. In July 2005, the court decided it lacked jurisdiction over the case for the following reasons:

THE COURT FINDS FROM REVIEWING THE RECORD OF THE PROCEEDING BEFORE THE "HARMONY COMMITTEE," THAT A "CONTESTED" HEARING WAS HELD AND THE RESULTS WERE REPORTED TO PLAINTIFF. THE PROCEEDING WAS "FORMAL" IN NOTICE AND THE TRIBUNAL APPEARED COMPETENT. SINCE NO FILING WAS MADE WITHIN 30 DAYS OF THE "HARMONY COMMITTEE'S" DECISION, THIS COURT IS WITHOUT JURISDICTION TO PROCEED.

Thereafter, the court entered a formal judgment denying Wooldridge's motion for summary judgment and dismissing the case for lack of jurisdiction. This appeal followed.

## II.  Standard of Review

■ Judicial review of a contested case is governed by §§ 536.100–.140. *See* § 536.100; *Teague v. Missouri Gaming Comm'n,* 127 S.W.3d 679, 682 (Mo.App. 2003). To be timely, a petition for review of a contested case must be filed "within thirty days after the mailing or delivery of the notice of the agency's final decision." § 536.110.1. Failure to comply with this statute deprives the trial court of subject matter jurisdiction over the case. *Hayes v. Porter,* 30 S.W.3d 845, 847 (Mo.App. 2000); *State ex rel. Director of Revenue v. Rauch,* 971 S.W.2d 350, 353 (Mo.App.

1998); *Britz v. Reynolds*, 895 S.W.2d 645, 648 (Mo.App.1995).

This 30–day time limitation, however, does not apply to judicial review of a uncontested case conducted pursuant to § 536.150. *Hagely v. Board of Educ. of Webster Groves School Dist.*, 841 S.W.2d 663, 669 (Mo. banc 1992). To be timely, a petition for review of a uncontested case need only be filed within a reasonable time. *State ex rel. Martin–Erb v. Missouri Comm'n on Human Rights*, 77 S.W.3d 600, 609 (Mo. banc 2002); *Hagely*, 841 S.W.2d at 669. Wooldridge filed his petition for review 53 days after Administrator Lowe's letter of August 26, 2004 was mailed. There is no dispute that, if Wooldridge was seeking judicial review of an uncontested case, his petition was timely filed. *See id.* at 670 (six-month interval between notice of the agency's adverse decision and the filing of the petition for review was reasonable).

"Dismissal for lack of subject-matter jurisdiction is proper whenever it appears, by suggestion of the parties or otherwise, that the court is without jurisdiction." *Missouri Soybean Ass'n v. Missouri Clean Water Comm'n*, 102 S.W.3d 10, 22 (Mo. banc 2003); Rule 55.27(g)(3). Wooldridge's petition for review was dismissed for lack of subject matter jurisdiction because it was not timely filed. The court's ruling was based on the premise that Greene County's final agency decision regarding Wooldridge's termination was made in a contested case. Wooldridge, on the other hand, contends the decision was made in an uncontested case. Thus, the outcome of this appeal turns on whether the trial court correctly decided to treat the agency's final decision as a contested case as defined by the MAPA. We review this issue of law *de novo*. *Kunzie v. City*

of Olivette, 184 S.W.3d 570, 572 (Mo. banc 2006); *McCoy v. Caldwell County*, 145 S.W.3d 427, 428 (Mo. banc 2004).

## III. Discussion and Decision

In Wooldridge's first point, he contends his petition sought judicial review of an uncontested case because: (1) there is no law which required Greene County to provide Wooldridge with a hearing to determine his legal rights, duties or privileges with respect to his termination; and (2) in any event, the Harmony Committee meeting afforded Wooldridge did not constitute the type of hearing that would meet the requirements for a contested case.

Section 536.010(2) defines a contested case as "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing[.]" *See Furlong Companies, Inc. v. City of Kansas City*, 189 S.W.3d 157, 165 (Mo. banc 2006).[6] The "law" referred to in this section includes any statute, ordinance or constitutional provision mandating a hearing. *Kunzie*, 184 S.W.3d at 572. Thus, the right to a hearing is determined by the substantive law outside of the MAPA. *Schlientz v. Rock Township Ambulance Dist.*, 146 S.W.3d 404, 405 (Mo.App.2004).

Greene County argues that Wooldridge has a constitutional due process right to a hearing because he could only be terminated for cause pursuant to the Resolution. We agree. *See Division of Family Services v. Cade*, 939 S.W.2d 546, 552 (Mo.App.1997) (an employee who can only be discharged for cause has a constitutionally protected property interest in continued employment, which creates a right under Missouri law to notice and a

---

**6.** At the time of the hearing, a "contested case" was defined under subsection (2) of § 536.010. That section has since been amended, and a contested case in currently defined under § 536.010(4) RSMo Cum.Supp. (2005).

hearing prior to being discharged from his employment).[7] *Cade* is consistent with precedent from other jurisdictions holding that a constitutionally-protected property interest in continued employment is created by a collective bargaining agreement which prohibits an employee from being discharged except for just cause. *See, e.g., Cassel v. State Dep't of Admin.*, 14 P.3d 278, 286 (Alaska,2000); *Santana v. City of Hartford*, 94 Conn.App. 445, 894 A.2d 307, 324 (2006); *Unland v. City of Lincoln*, 247 Neb. 837, 530 N.W.2d 624, 628 (1995); *Donofrio v. Hastings*, 54 A.D.2d 1110, 388 N.Y.S.2d 779, 781 (N.Y.App.Div.1976); *In re Gregoire*, 166 Vt. 66, 689 A.2d 431, 434 (1996). Therefore, Greene County was required by law to hold a hearing before terminating Wooldridge.

■ The next step in our analysis is to determine whether Greene County held a hearing sufficient to create a contested case as defined by § 536.010(2). The fact that some type of hearing was held is not dispositive. Not all hearings are sufficient to comply with the requirements of the MAPA and thereby create a contested case. *See, e.g., Kunzie v. City of Olivette*, 184 S.W.3d 570, 572–73 (Mo. banc 2006); *McCoy v. Caldwell County*, 145 S.W.3d 427, 429 (Mo. banc 2004); *Hagely v. Board of Educ.*, 841 S.W.2d 663, 668–69 (Mo. banc 1992); *Housing Authority of St. Louis County v. Lovejoy*, 762 S.W.2d 843, 844–45 (Mo.App.1988). As our Supreme Court explained in *McCoy* and *Kunzie*, there is no contested case as defined by § 536.010(2) unless the hearing mandated by law actually determines the legal rights, duties or privileges of the parties. *McCoy,*

145 S.W.3d at 428; *Kunzie*, 184 S.W.3d at 572–73.

In *McCoy*, a sheriff fired two of his deputies. Thereafter, each deputy requested a hearing before a three-person statutory review board. The board conducted its hearing, but it did not decide whether the deputies' terminations were proper. Instead, the board simply prepared a written report and forwarded it to the sheriff for his consideration. The sheriff still had final decision-making authority. Because the review-board hearing did not actually decide the deputies' right to continued employment, the Supreme Court held there was no contested case which could be judicially reviewed. *McCoy,* 145 S.W.3d at 429.

In *Kunzie*, the city manager fired a city employee. The city code created an advisory body to hear appeals by city employees concerning their discharge and make written recommendations to the city manager. The city manager, however, still had the right to make the final decision. Thus, the hearing before the advisory board did not determine the city employee's legal rights, duties or privileges. Despite the fact that the employee was afforded a hearing before the board, there was no contested case as defined by § 536.010(2). *Kunzie*, 184 S.W.3d at 572–73.

■ In our view, *Kunzie* and *McCoy* control the outcome of this appeal. The Resolution vested Administrator Lowe with the exclusive authority to discharge a GCHD employee like Wooldridge. Admin-

---

**7.** No right to a hearing is created by the Manual. Although a pre-termination hearing is permitted, use of this procedure is not required by law. There is no general, constitutionally-protected right to continued public employment in Missouri; such right must be found to exist by reason of a statute, ordinance, regulation or contract of employment.

*See Schlientz v. Rock Township Ambulance Dist.*, 146 S.W.3d 404, 405 (Mo.App.2004); *Physician No. 3491 v. North Kansas City*, 51 S.W.3d 101, 106 (Mo.App.2001). The Manual makes it abundantly clear that it creates no contractual right to continued employment with the county.

istrator Lowe did so on July 6, 2004, without any hearing being held. Although the grievance procedure in the Resolution afforded Wooldridge a "hearing" of sorts, it is abundantly clear that the Harmony Committee did not determine Wooldridge's legal right to continued employment by the county. Instead, the committee merely made a recommendation for Administrator Lowe to consider. He still retained the final decision-making authority, and his letter of August 26, 2004 was the agency's final decision on the matter. Since the hearing before the Harmony Committee did not determine Wooldridge's legal right to continued employment, there was no contested case as defined by § 536.010(2). Accordingly, the trial court erred in dismissing Wooldridge's petition for review for lack of subject matter jurisdiction. Wooldridge's first point is granted.

■ The judgment is reversed, and the case is remanded to the circuit court to judicially review the matter as an uncontested case pursuant to § 536.150.[8]

SHRUM and GARRISON, JJ., Concur.

---

8. In an uncontested case, the circuit court conducts a *de novo* review of the agency's decision in which it hears evidence on the merits, makes a record, determines the facts, and determines whether the agency's decision is "unconstitutional, unlawful, unreasonable, arbitrary, or capricious or otherwise involves an abuse of discretion." § 536.150.1; *Mosley v. Members of Civil Service Bd. for City of Berkeley,* 23 S.W.3d 855, 858 (Mo.App.2000); *see Furlong Companies, Inc. v. City of Kansas City,* 189 S.W.3d 157, 165 (Mo. banc 2006).