CORRECTED
6/1/2020



# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| **ROB SANDERS,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD82527** |
| | ) | |
| **v.** | ) | **OPINION FILED:  May 26, 2020** |
| | ) | |
| **CITY OF COLUMBIA, MISSOURI,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Boone County, Missouri**
The Honorable Dennis A. Rolf, Judge

Before Division One:  Lisa White Hardwick, Presiding Judge, Cynthia L. Martin, Judge
and Thomas N. Chapman, Judge

Rob Sanders ("Sanders") appeals from a judgment ("Judgment") entered by the trial

court in favor of the City of Columbia ("City") after a trial *de novo* conducted pursuant to

section 536.150[1] of the Missouri Administrative Procedure Act ("MAPA").  The trial

court's Judgment rejected all claims included in Sanders's Second Amended Petition, which

challenged the City Manager's administrative determination to terminate Sanders's

---

[1]All statutory references are to RSMo 2016 unless otherwise noted.

employment. Sanders argues that the trial court erred in entering its Judgment because: (1) the trial court misapplied section 536.150 by failing to conduct *de novo* review to determine whether the City Manager lawfully terminated Sanders's employment; (2) the trial court misapplied section 536.150 by not substituting its own discretion to determine whether Sanders violated City policy or ordinances; (3) substantial evidence did not support the City Manager's finding that Sanders violated the City's Use of Force Policy and City Ordinance section 19-225(a)(3); and (4) City Ordinance section 19-225(a)(3) is unconstitutionally vague and ambiguous. Finding no error, we affirm.

## Factual and Procedural Background[2]

Sanders was employed by the City with the Police Department from 1993 until September 2011. Prior to August 15, 2011, Sanders had thirteen instances of documented discipline, including four suspensions.

On August 15, 2011, Sanders responded to a call to assist other officers with the arrest of Kenneth Baker ("Baker"), who was intoxicated and resisting arrest. After a prolonged fight during which pepper spray was used to subdue Baker, Baker was eventually arrested and transported to the Police Department. Sanders assisted Baker to irrigate the pepper spray from Baker's face and eyes. Once inside the station, Baker was no longer handcuffed, was not violent, did not resist arrest, and did not attempt to flee. Baker was placed in a holding cell to await the arrival of the arresting officers who were

---

[2]A more complete discussion of the factual and procedural background in this case is available in *Sanders v. City of Columbia*, 481 S.W.3d 136 (Mo. App. W.D. 2016). On appeal from a court-tried case, the facts are viewed in the light most favorable to the judgment. *Howard County Ambulance District v. City of Fayette*, 549 S.W.3d 1, 3 n. 2 (Mo. App. W.D. 2018).

required to complete the booking process. In the meantime, Baker continued to complain of the effects of the pepper spray and asked if the water to a sink located in the holding cell could be turned on. Sanders provided Baker with a paper towel to fan his face. Sanders explained that the sink was broken and that the only water available to Baker was from the toilet. Baker began slapping the cell door. Sanders, who was outside the cell along with two other officers, advised Baker that he needed to stop slapping the door or Sanders would handcuff Baker to a ring in the holding cell. No one else was near or inside the cell besides the three officers. Baker struck the door again. Sanders opened the door and entered. Sanders instructed Baker to sit at the rear of the cell. Baker refused and cursed at Sanders. Sanders again directed Baker to sit at the rear of the cell. Baker again cursed at Sanders. Sanders then used a two-handed shove on Baker with such force that Baker flew airborne, striking his head on the concrete holding cell wall. The sound of Baker striking the concrete holding cell wall was so loud that it was captured by a microphone located in the booking room, which was located down and around two hallways.

Baker was handcuffed to the holding cell ring. Outside the cell, Sanders realized he had blood on his arm. Sanders and the other two officers returned to the cell and found that Baker had a laceration on his head. Baker was conscious, threatening to kill Sanders, and bleeding on the ground. The officers left Baker lying on the floor of the cell with his hands handcuffed behind him for twelve minutes, while they contacted emergency medical services. Upon returning to the booking room, Sanders stated to his fellow officers "Well, let's just say he lost round two."

3

After reviewing the incident, the Police Chief determined that Sanders had violated numerous department policies and issued a notice of termination. Sanders challenged the termination through the City's internal review process. Eventually, a hearing was held before the City's Personnel Advisory Board ("PAB"), which issued a decision upholding Sanders's termination of employment. Sanders appealed the PAB decision to the City Manager, who determined that Sanders's conduct violated City policy and ordinances and terminated Sanders's employment with the Police Department.

Sanders sought review of the City Manager's determination as a contested case under 536.140. A trial court conducted review accordingly, and reversed the City Manager's determination to terminate Sanders's employment. The City appealed. In *Sanders v. City of Columbia*, 481 S.W.3d 136 (Mo. App. W.D. 2016) (*"Sanders I"*), this Court reversed and remanded because the City Manager's determination should have been reviewed as a noncontested case pursuant to section 536.150.

Upon remand, the trial court conducted a trial *de novo* pursuant to section 536.150. The trial court entered its Judgment, including findings of fact and conclusions of law, concluding that the City Manager acted lawfully in determining that Sanders's use of force was objectively unreasonable and retaliatory in violation of the City's Use of Force Policy, permitting termination pursuant to City Ordinance section 19-225(a)(4). The trial court's Judgment also found that the City Manager acted lawfully in determining that Sanders's treatment of Baker was abusive and improper in violation of City Ordinance section 19-225(a)(3). The trial court thus concluded that the City Manager lawfully exercised the discretion delegated him over personnel matters to terminate Sanders's employment.

4

Sanders filed this timely appeal.

## Analysis

Sanders raises four points on appeal. Sanders's first point argues that the trial court misapplied the law by reviewing the City Manager's determination for substantial evidence instead of conducting a trial *de novo*. Sanders's second point argues that the trial court misapplied the law by deferring to the City Manager's discretion instead of exercising its own discretion to decide if Sanders violated City policy or ordinances. Sanders's third point argues that the City Manager's determination that Sanders violated City policy and ordinances was not supported by substantial evidence. Sanders's fourth point argues that City Ordinance section 19-225(a)(3) as applied to Sanders is unconstitutionally vague and ambiguous.[3]

## Standard of Review

This appeal involves judicial review of a noncontested administrative decision. *Sanders I,* 481 S.W.3d at 144. Judicial review of a noncontested administrative decision is governed by section 536.150.1, which provides that:

> When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person . . . and there is no other provision for

---

[3]Sanders's fourth point challenges the constitutionality of a municipal ordinance. Although not raised by the parties, we have a duty to examine our jurisdiction *sua sponte*. *Damon v. City of Kansas City*, 419 S.W.3d 162, 174 (Mo. App. W.D. 2013). The grant of authority to the Supreme Court of Missouri to exercise exclusive jurisdiction over questions involving the validity of a statute or constitutional provision does not extend to claims involving municipal ordinances. *Alumax Foils, Inc. v. City of St. Louis*, 939 S.W.2d 907, 912 (Mo. banc 1997) ("Claims that municipal ordinances are constitutionally invalid are not within the exclusive appellate jurisdiction of th[e] [Supreme] Court."). "Under our constitutional scheme . . . the court of appeals has the jurisdiction initially to consider such issues on appeal." *Id.*

judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action, and in any such review proceeding the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion; and the court shall render judgment accordingly, and may order the administrative officer or body to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.

Section 536.150 recognizes that "[i]n a noncontested case . . . the administrative body acts on discretion or on evidence not formally adduced and preserved." *Phipps v. School Dist. of Kansas City*, 645 S.W.2d 91, 94-5 (Mo. App. W.D. 1982) (citation omitted). As such, "[t]he [trial] court on such a 'review' has no record to review, and thus owes no deference to conform doubtful evidence to the administrative decision." *Id*. at 95 (citations omitted). The trial court does not apply the "competent and substantial evidence" test as applied in judicial review of contested administrative decisions, but instead conducts a *de novo* review during which "it hears evidence on the merits of the case, makes a record, determines the facts, and decides whether, in view of those facts, the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise involves an abuse of discretion." *Missouri Nat. Educ. Ass'n v. Missouri State Bd. of Educ.*, 34 S.W.3d 266, 274 (Mo. App. W.D. 2000) (citing section 536.150.1). Though the trial court determines the facts, section 536.150 "withhold[s] from the [trial] court the prerogative to 'substitute its

6

discretion for discretion legally vested in [an] administrative officer or body.'" *Phipps*, 645 S.W.2d at 95 (quoting section 536.150.1). This withholding of authority "does not abridge the role of the court as factfinder but rather confines the judgment to exclusively legal considerations. That scheme of [the] statute . . . acknowledges that an administrative agency exercises mingled powers, judicial and legislative or executive, and takes care that a court does not exercise that legislative or executive authority, so to avoid infringement of the constitutional separation of powers." *Id.* (citations omitted). Thus, "[w]hile the reviewing [trial] court may not substitute its discretion for discretion legally vested in an administrative agency, it does determine whether the agency exercised its discretion lawfully." *Missouri Nat. Educ. Ass'n*, 34 S.W.3d at 280. In other words, if the facts as found *de novo* by the trial court permitted the administrative agency to lawfully exercise discretion to take the action that is being challenged, the trial court may not substitute its own discretion, and must conclude that the administrative agency exercised its discretion lawfully.

On appeal, this Court's review of a noncontested case requires review of "the judgment of the trial court and not the agency, and thus the standard of review is the same as in any other court-tried case." *State ex rel. Crowe v. Missouri State Highway Patrol*, 168 S.W.3d 122, 126 (Mo. App. W.D. 2005). "Thus, the scope of appellate review is governed by Rule 73.01[4] as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *Id.* "The trial court's judgment will be affirmed 'unless there is no substantial

---

[4]All rule references are to *Missouri Court Rules, Volume I—State, 2019,* unless otherwise indicated. In *Murphy*, the Court interpreted Rule 73.01. In 2000, the relevant provisions of Rule 73.01 were transferred in a substantially similar form to Rule 84.13(d), which now governs the scope of review in cases tried without a jury.

evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *Id.* (citing *Legal Communications Corp. v. St. Louis County Printing & Pub. Co., Inc.*, 24 S.W.3d 744, 750 (Mo. App. E.D. 2000)). "Accordingly, the appellate court reviews the [trial] court's judgment to determine whether its finding that the agency decision was or was not unconstitutional, unlawful, unreasonable, arbitrary, capricious, or the product of an abuse of discretion rests on substantial evidence and correctly declares and applies the law." *Missouri Nat. Educ. Ass'n*, 34 S.W.3d at 275. This standard requires this Court "'to accept the trial [court's] credibility determinations and view the evidence in the light most favorable to the judgment, while disregarding all contrary evidence and permissible inferences." *State ex rel. Koster v. Morningland of the Ozarks*, *LLC*, 384 S.W.3d 346, 350 (Mo. App. S.D. 2012).

**Point One**

Sanders's first point asserts that the trial court "erroneously declared or misapplied"[5] the law because the trial court erroneously reviewed the City Manager's decision to terminate Sanders's employment to determine if it was supported by substantial evidence "instead of conducting the broader *de novo* review required" by section 536.150.1. The

---

[5]Sanders's Point One is multifarious in violation of Rule 84.04(d). "A point relied on violates Rule 84.04(d) when it groups together multiple, independent claims rather than a single claim of error, and a multifarious point is subject to dismissal." *Kirk v. State*, 520 S.W.3d 443, 450 n.3 (Mo. banc 2017). Sanders asserts the trial court erroneously declared and misapplied the law. Our standard of review under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) permits challenges when the trial court (1) misapplies the law, (2) erroneously declares the law, (3) enters judgment against the weight of evidence, or (4) enters a judgment not supported by substantial evidence. These distinct claims of error render Sanders's points relied on multifarious because each point challenges both the erroneous declaration and misapplication of the law. *Griffitts v. Old Republic Ins. Comp.*, 550 S.W.3d 474, 478 n.6 (Mo. banc 2018). However, because this court prefers to decide a case based on the merits, and because the substance of Sanders's challenge is discernable from his argument, we review his claims for their merit.

8

essence of Sanders's first point on appeal is that the trial court committed legal error because it did not make a *de novo* determination that Sanders should have been terminated.

Sanders's first point on appeal is not preserved for our review. Rule 84.04(e) expressly provides that "[f]or each claim of error, the argument shall . . . include a concise statement describing whether the error was preserved for appellate review; if so, how it was preserved; and the applicable standard of review." Sanders's brief does not comply with this requirement, as it only summarily states: "[t]his matter was presented to the trial court in this judge-tried case and it is, under Rule 78.07(b), therefore preserved for appellate review." [Appellant's Brief, p. 22] Sanders has not advised where in the record the trial court's purported legal error was presented to the trial court, as required by Rule 84.04(e).

Sanders's reference to Rule 78.07(b) does not cure or excuse his failure to comply with Rule 84.04(e). Rule 78.07(b) provides that "[e]xcept as otherwise provided in Rule 78.07(c), in cases tried without a jury . . . neither a motion for new trial or a motion to amend the judgment or opinion is necessary to preserve any matter for appellate review *if the matter was previously presented to the trial court*." (Emphasis added.) In other words, a motion for new trial or to amend a judgment is not required in a court-tried case to preserve an issue for appellate review if the matter was otherwise presented to the trial court, and if preservation of the matter is not subject to compliance with Rule 78.07(c). "'Even in a court-tried case, where a post-trial motion is not necessary to preserve an otherwise properly raised issue for appellate review, the appellant must make some effort to bring the alleged error to the trial court's attention.'" *Heck v. Heck*, 318 S.W.3d 760, 767

9

(Mo. App. W.D. 2010) (quoting *McMahan v. Mo. Dep't of Soc. Servs. Div. of Child Support Enforcement*, 980 S.W.2d 120, 126 (Mo. App. E.D. 1998)).

Here, "the matter" which is the subject of Sanders's first point on appeal is a claim of legal error relating to the trial court's application of an improper standard of review. Sanders's bare assertion that "this matter" was presented to the trial court at some point prior to the entry of the Judgment as to negate Rule 78.07(b)'s requirement to file a motion for new trial or to amend the judgment is not self-proving, particularly in light of Rule 84.04(e)'s requirement to identify where, in the record, "this matter" was presented. Moreover, even if Sanders presented his concern to the trial court before the Judgment was entered (which our review of the record fails to establish), Sanders's first point on appeal arguably implicates Rule 78.07(c), which provides that "[i]n all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." Sanders's first point on appeal argues that the trial court failed to make a statutorily required *de novo* determination that Sanders should have been terminated as required by section 536.150.1. Whether we agree with Sanders's assertion or not, by its nature, the error claimed by Sanders should have been raised with the trial court pursuant to Rule 78.07(c).

Sanders's first point on appeal is therefore not preserved for our review. We will not convict the trial court of error about which it has not been made aware. *McMahan*, 980 S.W.2d at 126-27 ("With only rare exceptions, an appellate court will not convict a trial court of error on an issue that was never presented to the trial court for its consideration.").

10

At best, therefore, Sanders's first point on appeal is subject to plain error review. We have discretion to review plain errors affecting substantial rights pursuant to Rule 84.13(c) "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." We will not find plain error, however, unless "there are substantial grounds for believing that the trial court committed error that is evident, obvious and clear and where the error resulted in manifest injustice or miscarriage of justice." *Mayes v. St. Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 269 (Mo. banc 2014) (internal quotations omitted).

Here, we need not address whether a manifest injustice or miscarriage of justice has occurred because there is no basis to conclude that the trial court committed error at all, let alone error that is evident, obvious and clear. Sanders's highlights several occasions where the Judgment refers to the phrase "substantial evidence," and then summarily extrapolates from the Judgment's use of the phrase that the trial court committed legal error by failing to conduct *de novo* review. Sanders ignores, however, that when read in its totality, the trial court's Judgment uses the analytical rubric Sanders urged in his post-trial/pre-Judgment brief, and required by section 536.150.1.

Sanders's post-trial briefs, which were submitted to aid the trial court in reaching its Judgment, argued that "the substantial and competent evidence in this case clearly demonstrated that the City Manager acted arbitrarily, capriciously and unreasonably, and that he abused his discretion, when he upheld [Sanders's] termination." In discussing the trial court's required standard of review, Sanders correctly articulated the trial court's obligation to engage in *de novo* factual review, while acknowledging that the trial court was not permitted to substitute its discretion for discretion legally vested in the City

11

Manager. Sanders's post-trial brief argued that the net effect of the obligations imposed by section 536.150.1 is to require the trial court to decide whether the City Manager acted in an unconstitutional, unlawful, unreasonable, arbitrary, capricious, or abusive manner. In making this determination, Sanders argued that a "[l]ack of substantial evidence indicates that an administrative body's findings are arbitrary and unreasonable." The Judgment consistently found that the trial court could not exercise its discretion to overturn the City Manager's decision that Sanders's actions violated City policy or ordinances and warranted termination if the City Manager's decisions were supported by substantial evidence. Thus, even presuming the trial court incorrectly stated the law by so holding, (which it did not, as we explain, *infra*), Sanders cannot now complain that the trial court applied the very standard of review he espoused in his post-trial brief. *Davis v. Weiland*, 557 S.W.3d 340, 349 (Mo. App. W.D. 2018) ("The general rule of law is that a party may not invite error and then complain on appeal that the error invited was in fact made. It is axiomatic that a party cannot lead a trial court into error and then lodge a complaint about the action.") (quotations omitted)).

More to the point, Sanders ignores that the trial court properly balanced the dual directives expressed in section 536.150.1 in entering its judgment. The trial court made *de novo* factual findings from the evidence, and then determined whether the City Manager lawfully exercised his discretion to terminate Sanders based on its *de novo* factual findings. This required the trial court to determine whether "substantial evidence," (referring to the trial court's *de novo* factual findings), supported the conclusion that the City Manager

exercised his vested discretion in a manner that was not unconstitutional, unlawful, unreasonable, arbitrary, capricious, or abusive.

The trial court conducted a three-day trial where six witnesses testified, and more than 45 exhibits were admitted into evidence, including evidence that detailed the City's internal proceedings in review of Sanders's employment termination.[6] The trial court's Judgment made numerous *de novo* factual findings based on this evidence, and cited to the evidence presented to the trial court in support of its *de novo* factual findings. The trial court's *de novo* factual findings included findings about the conduct Sanders engaged in on August 15, 2011, and, importantly, that it was this conduct that the City Manager relied on to find that Sanders violated the City's Use of Force Policy and City ordinances. In other words, the trial court "determine[d] the facts relevant to the question whether [Sanders] at the time of [the City Manager's] decision was subject to [the] legal dut[ies]" the City Manager claimed had been violated. Section 536.150.1.

After making *de novo* factual findings from the evidence presented, the trial court then turned to its statutory obligation pursuant to section 536.150.1 to "determine whether [the City Manager's] decision [to terminate Sanders], *in view of the facts as they appear to the court*, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion." Section 536.150.1. In making this *legal* determination,

___

[6]We recognize that much of the evidence before the trial court was developed from the proceedings before the City's Personnel Advisory Board, however, this evidence was introduced for the convenience of the parties, who elected not to duplicate the testimony before the trial court, rather than as an administrative record under review by the court. *See Phipps v. School Dist. of Kansas City*, 645 S.W.2d 91, 96 (Mo. App. W.D. 1982) ("The [trial] court in review of a noncontested case . . . reaches judgment without reference to the adjudicative information on which the administrative decision issued. It receives evidence on the merits of the case *the contestant presents* and finds the facts as they appear to that court to determine the validity of the agency decision.") (emphasis added).

13

the trial court was required to defer to discretion legally vested in the City Manager, without substituting its own discretion.

In addressing the discretion legally vested in the City Manager, the trial court's Judgment noted that section 19-227 of the City's Ordinances authorizes the City Manager to "suspend or terminate the services of any employee because of: . . . (2) For misconduct, insubordination, violation of regulations (as set forth in this section). (3) When such action becomes necessary for the good of the service." The trial court's Judgment noted that section 19-225(a)(3) of the City's Ordinances provides that "just cause for . . . discharge" includes "[a]busive or improper treatment of a . . . prisoner." The trial court's judgment noted that section 19-225(a)(4) of the City's Ordinances provides that "just cause for . . . discharge" also includes "violation of any lawful and reasonable departmental or city rule, regulation or directives." Finally, the trial court's Judgment noted that the City's Use of Force Policy prohibits "[t]he use of unreasonable force," as "determined from an objective, not subjective perspective."

Having found that the City Manager was legally vested with the discretion to terminate Sanders if Sanders abused or improperly treated a prisoner, or violated the City's Use of Force Policy through the use of unreasonable force, all that remained was for the trial court to determine whether, *in view of the facts found by the trial court*, the City Manager lawfully exercised his discretion to terminate Sanders. In other words, the trial court was required to determine whether the facts (that is, substantial evidence) as found by the trial court could have supported the City Manager's discretionary determination that Sanders violated City policy or ordinances and should be terminated as a result. As the

14

trial court's Judgment correctly noted, "[i]t is not the Court[']s duty to decide this case based on its opinion of the proper punishment, if any, to be imposed on [Sanders] by [the City], instead the Court's review of the City Manager's [decision to terminate Sanders] under Section 536.150.1 'is confined to exclusively legal considerations' -- meaning that this Court must determine whether the decision 'was or was not lawful.'"

Sanders complains that the trial court was bound by section 536.150.1 to make a *de novo* determination about whether Sanders's conduct violated the City's Use of Force Policy or City Ordinance section 225(a)(3). [Appellant's Brief, p. 26] In other words, Sanders argues that the trial court should have substituted its discretion for that of the City Manager to make a *de novo* decision about whether Sanders's conduct constituted a violation of City policy or ordinances. However, this is not a *de novo* determination the trial court was authorized to make pursuant to section 536.150.1, as it would have required the trial court to substitute its discretion for the discretion vested in the City Manager. Section 536.150.1 only authorized the trial court to "determine whether [the City Manager's] decision [to terminate Sanders], ***in view of the facts as they appear to the court***, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion."

Here, the trial court made *de novo* findings about Sanders's conduct, and made *de novo* findings that the conduct found by the trial court was the conduct relied on by the City Manager to determine that Sanders violated City policy and ordinances addressing the use of unreasonable force and the abusive or improper treatment of a prisoner. All that remained was a ***strictly legal question*** about whether these facts could, as a matter of law,

15

have been relied on by the City Manager to make the discretionary determination that Sanders violated City policy and ordinances and should be terminated as a result. If the facts as determined by the trial court could not, as a matter of law, have supported the City Manager's discretionary determination that Sanders violated the City's Use of Force Policy (by the use of unreasonable force determined objectively), and City Ordinance section 225(a)(3) (by abusively and improperly treating a prisoner), then the trial court would have been obligated to conclude, *as a strictly legal matter*, that the City Manager's termination of Sanders involved the unlawful exercise of the City Manager's discretion. But, if the facts as determined by the trial court could, as a matter of law, have supported the City manager's finding that Sanders violated the City's Use of Force Policy (by the use of unreasonable force determined objectively), and City Ordinance section 225(a)(3) (by abusively and improperly treating a prisoner), then the trial court had no authority to substitute its discretion on the subject of whether Sanders violated City policy or ordinances, or on the subject of whether Sanders should have been terminated as a result. Sanders's insistence that the trial court was obligated to exercise its discretion, *de novo*, to determine whether Sanders violated City policy or ordinances is at odds with the plain language of section 536.150.1.

We therefore conclude that the Judgment's references to "substantial evidence," read in context, reflect the trial court's accurate recognition that its *de novo* factual findings had to afford substantial evidence to support the City Manager's lawful exercise of vested discretion to determine that Sanders violated City policy or ordinances, subjecting him to termination. Demonstrative of this fact, the Judgment concluded, as a matter of law, that

16

the City Manager: "acted lawfully in his capacity as city manager . . . in determining that [Sanders's] use of force on August 15, 2011 was objectively unreasonable and retaliatory, and violated the City's Use of force Policy and City Ordinance 19-225(a)(4);" and "acted lawfully in his capacity as city manager . . . in determining that [Sanders's] treatment of Baker was abusive and improper in violation of City Ordinance 19-225(a)(3)."

The trial court committed no error, plain or otherwise.

Point One is denied.

## Point Two

Sanders's second point asserts that the trial court erred by not substituting its own discretion to determine whether Sanders violated City policy or ordinances, because the City Manager had no discretion to terminate him unless it could be found that he violated City policy or ordinances. In other words, Sanders argues that because the City Manager's ability to exercise discretion to terminate him depended on whether Sanders had, in fact, violated City policy or ordinances, the trial court erred as a matter of law because it did not make a *de novo* finding that Sanders violated a City policy or ordinances.[7]

Sanders's second point on appeal suffers the same malady as is addressed in connection with his first point on appeal, as Sanders did not preserve this claim of error for appellate review by raising the matter challenged with the trial court as required by both

---

[7]The argument portion of Sanders's Brief addressing the second point on appeal is confusing. It purports to challenge, as a legal proposition, whether the City Manager had the sole discretion to terminate Sanders at all. But, read as a whole, it is plain that Sanders is simply making the point that the City Manager's "sole discretion" to terminate him depended on the presence of a determined violation of City policy or ordinances. As such, point two on appeal is duplicative of Sanders's first point on appeal.

17

Rule 78.07(b) and Rule 78.07(c), or by advising this Court as required by Rule 84.04(e) where in the record the matter was so preserved.

In any event, Sanders's second point on appeal is nothing more than a rehash of the challenge raised in his first point on appeal, reflecting Sanders's fundamental misunderstanding of the difference between factual findings about Sanders's conduct (which were, in fact, made by the trial court, *de novo*), and legal conclusions about whether that determined conduct supported the City Manager's discretionary determination that Sanders's violated City policy and ordinances and should be terminated as a result.

Point Two is denied.

### Point III

Sanders's third point on appeal argues that the trial court erroneously found that substantial evidence supported the City Manager's determination that Sanders violated City Ordinance Code section 19-225(a)(3), City Ordinance section 19-225(a)(4) and the City's Use of Force Policy. In other words, Sanders alternatively argues that if the trial court properly applied the law to review this noncontested case (and we have determined that it did), the trial court's *de novo* factual findings do not provide substantial evidence to support the City Manager's exercise of discretion to find that Sanders violated City policy or ordinances as to permit his termination. Sanders's argument is unavailing.

"A trial court's judgment is not supported by substantial evidence when 'there is no evidence in the record tending to prove a fact that is necessary to sustain the [trial] court's judgment as a matter of law.'" *Laut v. City of Arnold*, 491 S.W.3d 191, 197 (Mo. banc 2016) (quoting *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014)). "'When reviewing

18

whether the [trial] court's judgment is supported by substantial evidence, appellate courts view the evidence in the light most favorable to the [trial] court's judgment and defer to the [trial] court's credibility determinations[,] . . . no contrary evidence need be considered on a substantial-evidence challenge . . . [and] [trial] courts are free to believe any, all, or none of the evidence presented at trial.'" *Id*. (quoting *Ivie*, 439 S.W.3d at 200). Because, "[w]hen faced with a no substantial evidence challenge, no contrary evidence is to be considered[,] . . . our review is limited to determining whether any evidence in the record supports the trial court's finding[s]." *Wyrick v. Henry*, 592 S.W.3d 47, 58 (Mo. App. W.D. 2019) (citing *Laut*, 491 S.W.3d at 197).

Here, the trial court made numerous *de novo* factual findings about Sanders's conduct. And the trial court made *de novo* factual findings that the City Manager relied on the conduct found by the trial court to have occurred to conclude that Sanders violated the City's Use of Force Policy, and City Ordinances sections 19-225(a)(3) and (4).

Sanders does not challenge ***any*** of these *de novo* factual findings on appeal. All that Sanders challenges is whether the facts as determined by the trial court are sufficient to constitute "substantial evidence" supporting the City Manager's determination that Sanders violated the City's Use of Force Policy, and City Ordinance sections 19-225(a)(3) and (4).

City Ordinance section 19-225(a) provides:

> [V]iolations set forth in this provision may be considered as just cause for suspension or discharge. The list of offenses presented here [in Section 19-225(a)] does not purport to be all inclusive; neither is it intended that these guidelines should be rigidly followed.
>
> . . .

19

(3) Abusive or improper treatment of a client, prisoner, citizen, or other individual in the community or on the city payroll[;]

(4) Violation of any lawful and reasonable department or city rule, regulation or directive.

The City's rules, regulations, and directives included a Use of Force Policy, prohibiting the use of unreasonable force. The Use of Force Policy provided that:

> The use of unreasonable force has never been, and will never be, tolerated as it degrades the community's confidence in the police, exposes officers to legal and physical hazards, and violates the very Constitutional rights the police are sworn to uphold and protect.

The Use of Force Policy defined "force" as "the amount of effort required by police to compel compliance from an unwilling subject." The Use of Force Policy defined "objectively reasonable force" as "force which when judged by an objective and prudent officer, not with hindsight, but with knowledge of the same facts or circumstances known to the officer whose force is under consideration, could be found to be reasonable." The Use of Force Policy provided a test of "reasonableness" weighing the following factors:

> Whether the suspect poses an immediate threat to the safety of officers or others;
>
> Whether the suspect is actively resisting arrest or attempting to evade arrest by flight;
>
> The severity of the crime at issue;
>
> The number of suspects and officers involved;
>
> The condition of the officer and suspect (size, age, strength, skill, injury, and fatigue);
>
> The suspect's mental state;
>
> The duration of the action;

20

The use of alcohol or drugs by the suspect;

The availability of an item that could be used as a weapon;

The suspect's history of violence or weapon use;

The presence of innocent bystanders;

The reasonably likely effects of the force;

Whether a subject is restrained or partially restrained; and

Any and all other relevant factors.

The trial court concluded that the City Manager "acted lawfully in his capacity as city manager of [the City] in determining that [Sanders's] treatment of Baker was abusive and improper in violation of City Ordinance [section] 19-225(a)(3)." The trial court also concluded that the City Manager "acted lawfully in his capacity as city manager of [the City] in determining that [Sanders's] use of force on August 15, 2011 was objectively unreasonable and retaliatory, and violated the City's Use of Force Policy and City Ordinance 19-225(a)(4)." The trial court thus concluded that the facts as it had determined relating to Sanders's conduct provided substantial evidence sufficient to support the City Manager's discretionary decision to terminate Sanders's employment because Sanders violated the City's Use of Force Policy and City ordinance sections 19-225(3) and (4).

This was not error. The trial court found that Baker was intoxicated; that Baker was not violent once inside the police station; that Baker no longer resisted arrest and did not attempt to flee; that Baker was not handcuffed while in the booking room, as he was escorted to the holding cell, or while he was in the holding cell; that once inside the holding

21

cell, Baker slapped the inside of the holding cell door; that Sanders and two other officers waited in close proximity to the holding cell, out of sight, in anticipation of Baker striking the holding cell door again; that while in the holding cell Baker did not attempt to harm himself or others; that after Baker struck the holding cell door again, Sanders and the two other officers entered the holding cell; that Sanders asked Baker to sit at the rear of the cell; that Baker was non-compliant and cursed at Sanders; that Sanders again asked Baker to sit at the rear of the cell; that Baker responded in the same non-compliant manner; that in the immediate moments prior to Sanders's use of force, Baker was stationary and upright and made no threatening movements toward Sanders; that Sanders used a two-hand shove on Baker; that Sanders used the two-hand shove with such force that Baker flew airborne, striking his head on the concrete holding cell wall; that Baker was injured because of Sanders's two-hand shove; that after Sanders handcuffed Baker to the ring in the holding cell, Sanders found blood on his arm and went in to check on Baker and found that Baker had a laceration on his head; that Baker was left lying on the floor of the cell and handcuffed to the ring attached to the back wall of the holding cell while emergency medical services were called to treat Baker; that Sanders left Baker unattended in the holding cell for twelve minutes while awaiting emergency medical services; that part or all of that time, Baker was bleeding on the floor of the holding cell; that when Sanders returned to the booking room following the two-hand shove and discovery of Baker's injury, Sanders stated to his fellow officers that "Well, let's just say he lost round two."

These facts, determined *de novo* by the trial court, provide substantial evidence that Sanders violated the City's Use of Force Policy through the objectively unreasonable use

22

of force, and that Sanders violated City Ordinance section 19-225(a)(3) prohibiting abusive and improper treatment of a prisoner. Because the trial court found that the City Manager relied on the facts determined by the trial court to terminate Sanders, it follows that the City Manager's determination that Sanders violated the City's Use of Force Policy and City Ordinance sections 19-225(a)(3) and (4) was supported by substantial evidence, and that the City Manager lawfully exercised his discretion to terminate Sanders as a result.

The argument portion of Sanders's Brief is devoted to highlighting contrary evidence, and/or contrary conclusions that could have been drawn from the evidence, and reiterates the contention that the trial court erroneously failed to exercise independent discretion to determine whether Sanders violated City policy and ordinances. Sanders's argument ignores our standard of review when presented with a no substantial evidence challenge, as contrary evidence or inferences are to be ignored. *Laut*, 491 S.W.3d at 197. And as we have already explained, Sanders's argument ignores that the trial court had no authority under section 536.150.1 to substitute its discretion for the discretion lawfully vested in the City Manager, and was only authorized to determine if the City Manager exercised his discretion lawfully.

Point Three is denied.

## Point Four

Sanders's fourth point on appeal argues that City Ordinance section 19-225(a)(3), which identifies "abusive or improper treatment of a . . . prisoner" as a "just cause" basis for termination of employment, is "unconstitutionally vague and ambiguous" because it offers "no guidance, through explicit standards . . . and [was] applied arbitrarily based on

23

the City's wholly subjective interpretation." Sanders's point on appeal fails to identify the constitutional provision that City Ordinance section 19-225(a)(3) allegedly violates, rendering the point on appeal an abstract statement of law in violation of Rule 84.04(d)(4). However, the argument portion of Sanders's Brief clarifies that Sanders contends the vague and ambiguous nature of the ordinance constitutes a "due process" violation.[8] Sanders's argument is unavailing.[9]

"The vagueness doctrine protects against the arbitrary and discriminatory application of laws." *New Evangelistic Center v. City of St. Louis*, 564 S.W.3d 665 (Mo. App. E.D. 2018). "Due process requires that laws provide notice to the ordinary person of what is prohibited." *Id.* "If the terms or words used in the ordinance are of common usage and are understandable by persons of ordinary intelligence, they satisfy the constitutional requirement as to definiteness and certainty." *Id.* "The person challenging the statute's validity bears the burden of proving the act clearly and undoubtedly violates the constitution." *Board of Managers of Parkway Towers Condominium Ass'n, Inc. v. Carcopa*, 403 S.W.3d 590, 592 (Mo. banc 2013).

Here, the trial court concluded that City Ordinance section 19-225(a)(3)'s language prohibiting "abusive or improper treatment" of a prisoner was not unconstitutionally vague or ambiguous, on its face or as applied. The trial court did not misapply the law. Our

---

[8]*See* footnote 3, *supra*, addressing the fact that the constitutionality of a municipal ordinance is not a matter vested exclusively in the appellate jurisdiction of the Missouri Supreme Court.

[9]Once again, Sanders's fourth point on appeal is not preserved for our review as it does not identify where, in the record, his constitutional challenge was presented to the trial court for consideration, as required by Rule 84.04(e). We have *ex gratia* elected to review the merits of Sanders's point on appeal. A cursory review of the record establishes that Sanders raised this matter with the trial court, as the trial court addressed the constitutionality of City Ordinance section 19-225(a)(3) in the Judgment.

24

courts have already held that similar language does not offend the due process clause on the basis of vagueness. *Prokopf v. Whaley*, 592 S.W.2d 819, 824 (Mo. banc 1980) (holding a St. Louis police board rule proscribing "any abuse of prisoners, either by word or act" was not unconstitutionally vague); *see also Milani v. Miller*, 515 S.W.2d 412, 419 (Mo. 1974) (holding that a St. Louis police board rule that proscribed "any conduct, immoral or otherwise, unbecoming to a member of the department" was not unconstitutionally vague). Sanders has failed to sustain his burden to prove clearly and undoubtedly that City Ordinance section 19-225(a)(3) violates the due process clause.

Even assuming Sanders could sustain his burden to establish that City Ordinance section 19-225(a)(3) is unconstitutionally vague and unambiguous, (which he cannot), he would not be entitled to relief from the Judgment. The City Manager separately found that Sanders violated the City's Use of Force Policy, and City Ordinance section 19-225(a)(4) as a result. That violation independently supports the City Manager's lawful exercise of his discretion to terminate Sanders. It is therefore immaterial that the City Manager also relied on a violation of City Ordinance section 19-225(a)(3) to support the decision to terminate Sanders. Even if Sanders's constitutional challenge to City Ordinance section 19-225(a)(3) was sustained, his termination would not be unlawful.

Point Four is denied.

## Conclusion

The trial court's Judgment is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur